DISCIPLINARY PROCEEDINGS
LEMMON, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, brought this disciplinary action against Hilliard C. Fazande, II, contending *550 that he had violated disciplinary rules as detailed in eight specifications. The commissioner, after a hearing, found that four of the eight charges had been substantiated by the evidence and that respondent had violated DR 1 — 102(A)(1), (4) and (6), DR 6-101(A)(3), DR 7 — 101(A)(2) and DR 9-102.[1] The commissioner recommended that the respondent be suspended from practice, but did not recommend a specific period.
The Bar Association concurred in the commissioner’s findings as to the violations and suggested a suspension of three years.[2] Respondent filed exceptions to the commissioner’s report and now contends in this court that the evidence did not support the commissioner’s findings that he violated the disciplinary rules.
I.
In Specification No. 2, the commissioner found that Mrs. Sheila Williams retained respondent to obtain a legal separation in January, 1977, and paid him a fee of $450, plus costs of $98.15. Respondent appeared for Mrs. Williams at a rule for child support and alimony, but failed to obtain the separation or to enforce the support judgment. When Mrs. Williams was unable to communicate with respondent for six to eight months, she retained other counsel to complete the separation. Although Mrs. Williams requested that respondent return the fee, he has not yet returned any portion of it.
The Commissioner concluded that respondent had violated DR 6-101(A)(3) by neglecting a legal matter entrusted to him and DR 7-101(A)(2) by failing to carry out a contract of employment.
Respondent contends that all that remained in his representation was a final hearing and that he had done substantial work toward completion of the litigation before he was discharged. He points out that the $450 fee was quoted for an uncontested separation and that he did not increase the fee when the husband filed re *551 sponsive pleadings. He further contends that Mrs. Williams demanded the return of the entire fee and refused to accept an offer (made through the committee in October, 1978) of a partial refund.
After reviewing the record, we conclude that the Bar Association proved by clear and convincing evidence that respondent accepted employment and a retainer from Mrs. Williams, neglected the matter by failing to respond to her calls or correspondence, failed to complete the employment, forcing the client to employ another lawyer to obtain the separation, and failed to refund any portion of the fee (or even offer to do so until contacted by the Bar Association).
II.
In Specification No. 3, the commissioner found that respondent had been retained in February, 1977, by Mr. and Mrs. Larry Coleman to handle an appeal involving their suspension from participation in a federal food stamp program. Respondent had entered the case in the district court, after two previous lawyers had withdrawn and the government had filed a motion to dismiss on the grounds that the period of suspension had already elapsed and the matter was moot. After the trial court granted the motion to dismiss, the clients agreed to pay respondent a $2,000 fee for the appeal and paid half of it in March of 1977. They had earlier paid him a $450 fee, which (they contended in the hearing) was for services in opposing the dismissal in the trial court. In October, 1978, after respondent had repeatedly told them he was waiting for a hearing date, the clients learned that the appeal had been dismissed in June, 1977, because of respondent’s failure to file a brief.
The commissioner concluded that respondent violated DR 6-101(A)(3) by neglecting a legal matter entrusted to him, resulting in the dismissal of the appeal. The commissioner further concluded that respondent had violated DR 1 — 102(A)(1), (4) by attempting to deceive his clients when he knew or should have known that the appeal had been dismissed.
Respondent contends that the commissioner erred in believing the unreliable testimony of the clients. He testified that they instructed him to dismiss the appeal after he discussed the possibility that criminal charges might still be brought against one of them in connection with the food stamp suspension. He further contends that the $1,000 payment was for his representation in the district court on the food stamp matter and that the other $450 fee was for his services in obtaining a new trial and acquittal for Mrs. Coleman on criminal charges in municipal court.[3] He also points out that the clients never requested a refund.
After reviewing the record, we conclude that the Bar Association proved that respondent not only accepted a fee for an appeal and never completed the matter or returned the fee, but also deceived his clients by telling them he was waiting for a hearing date, when the appeal had been dismissed because of his failure to file a brief. As a result, the clients lost their rights to an appeal. Additionally disturbing was respondent’s blaming the delay on the courts, a cover-up which brought undeserved disrepute upon the judicial system. Finally, the fact that the appeal was dismissed involuntarily for failure to file a brief, and not voluntarily on respondent’s motions, refutes respondent’s version that his clients instructed him to dismiss the appeal.
*552 III.
In Specification No. 5, the commissioner found that respondent, in handling a personal injury claim for two clients, guaranteed payment to the St. Bernard Medical Center of certain medical bills. After receipt of settlement funds in late 1976, respondent in August, 1977 issued two checks in partial payment of the bills, but the checks were returned because of insufficient funds. On June 23, 1979, the medical center wrote to respondent demanding payment under threats of prosecution. On July 23, 1979, the medical center contacted the Bar Association and executed an affidavit in preparation^for the filing of criminal charges. Respondent finally paid the bill in full.
The commissioner concluded that respondent had violated DR 9-102 by converting to his own use funds derived from his clients’ settlement. Additionally, the commissioner found that respondent had violated DR 1-102(A)(1), (4) by engaging in dishonest and fraudulent conduct in the issuance of the NSF checks.
Respondent contends that the commissioner improperly excluded evidence that he issued the checks to the St. Bernard Medical Center pursuant to an agreement with Dr. Emile Bertucci that the checks would be held until respondent approved their deposit, when his financial position improved. The agreement to hold the checks, according to respondent, was not misuse of a client’s funds, but was the equivalent of his payment of the medical bills and Dr. Ber-tucci’s making a personal loan to respondent. In respondent’s view, the agreement went awry when Dr. Bertucci’s son, the center’s financial manager, deposited the checks without knowing of the agreement. Respondent points out that the medical center (and not his clients) filed the complaint against him and that his clients were never contacted for payment. Respondent further argues that the letter agreement from Dr. Bertucci (which he attempted to introduce, but which was excluded as hearsay) supports his version of the facts and proves that he neither issued the checks with intent to defraud nor converted to his own use his clients’ funds.
Upon reviewing the record, we have examined Dr. Bertucci’s letters, which were proffered after being excluded from evidence.[4] In October, 1976, Dr. Bertucci agreed to extend the time for settling the account. In September, 1977, Dr. Bertucci verified his agreement to hold the checks and explained that the checks had been deposited inadvertently. And in a December, 1981 letter addressed “To Whom It May Concern”, Dr. Bertucci indicated that he was not anxious to pursue the matter further and that he was not aware of any action for collection that had been taken beyond his personal authority.
Under the totality of evidence, we conclude that the Bar Association did not prove by clear and convincing evidence that the respondent issued the two checks with intent to defraud. However, while respondent’s temporary use of the funds and his delay (with Dr. Bertucci’s permission) in paying the medical bills did not truly constitute a conversion of his clients’ funds to his own use, the questionable procedure at least constituted a violation of DR 9-102(B)(4) by failing to promptly pay to the client (or to third parties as directed by the clients) funds which the clients were entitled to receive.
IV.
In Specification No. 7, the respondent agreed in April, 1977, to represent 31 men in a labor dispute at a charge of $200 per man (or a total fee of $6,200) as a nonrefundable retainer to be credited against a one-third contingency fee. Respondent was to appeal a district court decision and then seek further review, if necessary. Respondent received only $3,200 because some of *553 the men decided not to participate in the appeal. The commissioner found that respondent did not file the appeal or any other pleadings on behalf of the remaining clients, nor did he respond to their attempts to communicate with him after April of 1977 or refund any of the fee.
The commissioner concluded that respondent had violated DR 7-101(A)(2) by failing to carry out a contract of employment and DR 1-102(A)(1), (4), (6) by engaging in conduct involving misrepresentation.
Respondent testified that he had quoted the clients a fee of $6,000 and had only been paid about $3,000. He asserted that he earned the partial fee by reviewing the voluminous file while awaiting payment of the balance of the fee, and he further testified that he notified the clients that their appeal lacked merit, offering to meet with them and explain further. He admitted, however, that he never directed a letter to the clients advising that he was not proceeding with the appeal.
After reviewing the record, we conclude the respondent collected a fee in excess of $3,000, but did not file the appeal or give appropriate notice to his clients that he was not going to pursue the matter, thereby causing them to lose their appeal rights. We further conclude that respondent failed to communicate and discuss the matter with his clients or to return the fee.
V.
In overall mitigation, respondent argues that all four complaints were lodged within a short period of time and were the first against him since he began the practice of law in 1971. He further points out that he gave up his private practice in 1979. Finally, he argues that his professional conduct did not fall below the minimum standard required by the disciplinary rules and that suspension is unwarranted by the facts..
The purpose of attorney disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct in order to safeguard the public, preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. Louisiana State Bar Ass’n. v. Causey, 393 So.2d 88 (La.1980). We agree with the commissioner’s findings that respondent violated DR 6-101(A)(3) by neglecting legal matters entrusted to him, DR 7-101(A)(2) by failing to carry out contracts of employment, and DR 1-102(A)(4) by engaging in misconduct involving misrepresentation. Failing to perform legal services for which an attorney has been paid, allowing a client to lose his right of appeal because of inaction, and misrepresenting the status of litigation by blaming the judicial system for delays are serious violations which warrant suspension from practice.
Accordingly, it is ordered that Hilliard J. Fazande, II be suspended from the practice of law in the State of Louisiana for a period of thirty months, effective upon the date of the finality of this decree. All costs of this proceeding shall be paid by the respondent.

. The text of the disciplinary rules are as follows:
“DR 1-102. Misconduct.
“(A) A lawyer shall not:
“(1) Violate a Disciplinary Rule.
“(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

“(6) Engage in any other conduct that adversely reflects on his fitness to practice law. “DR 6-101. Failing to Act Competently.
“(A) A lawyer shall not:
“(3) Neglect a legal matter entrusted to him.
“DR7-101. Representing a Client Zealously.
“(A) A lawyer shall not intentionally:

“(2) Fail to carry out a contract of employment entered into for professional services, but he may withdraw as permitted under DR2-110, DR5-102, and DR5-105.
“DR 9-102. Preserving Identity of Funds and Property of a Client.
“(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
“(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
“(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
“(B) A lawyer shall:
“(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
“(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
“(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
“(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.”

. The Bar Association initially excepted to the commission’s findings that Specification No. 8 had not been proved, but abandoned that exception in argument before this court.

. The clients were apparently mistaken about the amount they paid respondent for his services in the district court on the food stamp matter. The clients introduced two checks, one dated October 18, 1976 in the amount of $250 and the other dated August 26, 1977 in the amount of $200. The first check corresponds with the date of respondent’s entry into the food stamp litigation in the district court in September, 1976, and the second corresponds exactly with the date of Mrs. Coleman’s acquittal in municipal court. Nevertheless, the fact remains that respondent’s own letter, showing that the $1,000 was a partial payment on his fee for the appeal, was not refuted by respondent’s evidence of other uncompensated services.

. Because of the nature of the hearing, and because the complaining witness (Dr. Bertuc-ci’s son) testified that he did not personally conduct the discussions of payment of the bills with respondent or his wife, we have considered Dr. Bertucci’s letters, in the interest of justice, as supplemental to his son’s testimony.