864 So.2d 174 (2004)
In re Hilliard C. FAZANDE, II.
No. 2003-B-2210.
Supreme Court of Louisiana.
January 21, 2004.
*175 Charles B. Plattsmier, Chief Disciplinary Counsel, Shana M. Broussard, Deputy Disciplinary Counsel, for Applicant.
Hilliard C. Fazande, III, New Orleans, James A. Gray, II, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Hilliard C. Fazande, II, an attorney licensed to practice law in Louisiana.[1]

UNDERLYING FACTS

Count IBatiste Matter
In July 1996, John Batiste, Jr., retained respondent to institute an action against *176 the Department of the Army.[2] Respondent filed suit on behalf of Mr. Batiste against the Secretary of the Department of the Army and others in the United States District Court for the Eastern District of Louisiana. In March 1997, the defendants filed a motion to dismiss or, alternatively, a motion for summary judgment. Upon respondent's motion, the court continued the hearing for two weeks so as to give respondent time to file an opposition. Respondent failed to submit a timely opposition. By minute entry dated April 23, 1997, the court granted the defendants' motion and dismissed Mr. Batiste's suit. Respondent did not move for reconsideration or file an appeal. Mr. Batiste discharged respondent on June 23, 1998 and filed a legal malpractice action against respondent on July 28, 1999.
The facts are disputed with regard to events which occurred between the dismissal of the suit and the discharge of respondent by Mr. Batiste. Respondent testified at the formal hearing that he realized at the time of the dismissal that he believed he filed the petition in the wrong court and needed to file in the Court of Claims in Washington D.C. He contended that he advised Mr. Batiste of the dismissal approximately one week after it occurred and discussed the need to file in the new venue. Respondent testified he obtained information on the appropriate procedure to file in the Court of Claims and met with his client after receiving the information. Based on the information he received, respondent believed he had four years (until the summer of 2001) to file the action in the Court of Claims. As a result, he simply conducted periodic legal research for the first year following the dismissal and tried to become familiar with the procedures in the Court of Claims. Respondent testified Mr. Batiste discharged him in June 1998, without giving him the opportunity to file the suit in the new venue.
In contrast, Mr. Batiste testified that respondent did not advise him of the dismissal of his suit, and that he did not learn of the dismissal until June 1998, one year after the case had been dismissed. Upon learning of the dismissal, Mr. Batiste testified he discharged respondent by letter dated June 23, 1998 based on neglect. Additionally, he sent a letter in proper person to the trial court advising the court he was unaware of the dismissal and urging the court to "reopen" his case.[3] Mr. Batiste also testified he filed a complaint with the ODC advising of respondent's neglect of his legal matter and failure to communicate, filed a legal malpractice suit in proper person against respondent and retained new counsel to pursue his case against the Department of the Army.

Count IIJackson/Davis Matters
On February 13, 1998, Bernadette Jackson and her children, 21-year old Patrick Davis and 12-year old Monica Davis, were involved in an automobile accident. Six days later, they retained respondent to represent their interests and pursue their *177 personal injury claims. Initially, respondent communicated with his clients frequently and assured them he was protecting their interests. However, after several months, respondent began to communicate with his clients less often. Ultimately, respondent failed to file suit on behalf of his clients and their claims prescribed.[4]
Approximately one month after the case had prescribed, Ms. Jackson and Mr. Davis met with respondent. Mr. Davis later testified that, at that meeting, respondent "apologized and everything, saying that he was sorry that he didn't file and all this and [then] he said it would come out of his pocket for like whatever it was that he was supposed to do ..."
At this point, it is unclear whether respondent orally advised his clients to seek outside counsel to discuss their potential malpractice claims against him, but it is undisputed that respondent did not subsequently advise his clients in writing to do so. In any event, respondent's clients, on their own, consulted Harold Bartholomew, Ms. Jackson's friend and fellow board member on New Orleans Legal Assistance Corporation ("NOLAC").[5] Eventually, respondent settled his professional liability directly with Mr. Davis with the consent of Mr. Bartholomew.[6]
In May 1999, Ms. Jackson filed a disciplinary complaint with the ODC on her own behalf and that of her minor daughter. Mr. Davis instituted a separate complaint with the ODC.

DISCIPLINARY PROCEEDINGS

Formal Charges
Following its investigation, the ODC filed two counts of formal charges against respondent. As to the Batiste matter, the ODC alleged violations of Rules 1.3 (lack of diligence), 1.4(a) (failure to keep client reasonably informed about the status of legal matter and failure to comply with reasonable requests for information), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. As to the Jackson/Davis matter, the ODC alleged respondent's conduct violated Rules 1.3 (lack of diligence), 1.4(a) (failure to keep client reasonably informed about the status of legal matter and failure to comply with reasonable requests for information) and 1.8(h) (making an agreement prospectively limiting lawyer's malpractice liability).
Respondent filed an answer denying the allegations of misconduct, reiterating his defenses raised in connection with the investigations of the complaints. Accordingly, the matter was scheduled for a formal hearing before the committee.
*178 At the hearing, the complainants testified on behalf of the ODC. Respondent was present at the hearing and testified on his own behalf.

Recommendation of the Hearing Committee
As to the Batiste matter, the committee found respondent failed to promptly notify Mr. Batiste that his complaint had been dismissed, failed to quickly pursue the filing in the Court of Claims and failed to notify his client of options available to him to further pursue his legal matter.
Regarding the Jackson/Davis matter, the committee concluded respondent failed to provide his clients with specific information regarding any action he was taking on their case, and permitted their claims to prescribe due to respondent's failure to obtain the necessary documentation to pursue them. The committee pointed out Ms. Jackson and Mr. Davis did ultimately obtain independent counsel on their own volition prior to Mr. Davis entering into an agreement to settle with respondent for his malpractice. Nevertheless, it found respondent attempted to settle his legal malpractice claims without advising them in writing that they should seek independent counsel.[7]
Based on these factual findings, the committee concluded respondent violated Rules 1.3, 1.4 and 8.4(a) in the Batiste and Jackson/Davis matters by neglecting his clients' legal matters and failing to communicate with them. It also determined there was a "de minimis violation" of Rule 1.8(h) in the Jackson/Davis matter based on respondent's failure to advise in writing Ms. Jackson and Mr. Davis to seek independent counsel prior to attempting to settle his legal malpractice.
The committee found respondent knowingly violated duties owed to his clients, and that his failure to diligently pursue his clients' legal matters and to communicate with them resulted in actual injury. It determined Mr. Batiste suffered actual harm as a result of the unnecessary delay of his legal matter caused by respondent's actions, as well as the expense of having to retain new counsel. Further, the committee recognized that, although respondent settled his malpractice liability with Mr. Davis, the record indicated Ms. Jackson and her daughter had suffered some damages, albeit a minimal amount.
In determining an appropriate sanction, the committee found several aggravating factors: respondent's prior disciplinary record for similar misconduct,[8] substantial legal experience,[9] pattern of misconduct and multiple offenses. The only mitigating factor recognized was respondent's cooperative attitude toward the proceedings.
Citing the ABA's Standards for Imposing Lawyer Sanctions, the committee found a one-year suspension to be appropriate *179 under the facts. Relying on the existence of respondent's prior disciplinary offenses, the committee determined that no portion of the suspension should be deferred.

Recommendation of the Disciplinary Board
The disciplinary board adopted the factual findings of the hearing committee. However, the board disagreed with the committee's legal finding that respondent's actions in the Jackson/Davis matter violated Rule 1.8(h), which prohibits the settling of such a claim unless the client has been advised in writing that independent representation is appropriate.[10] The board noted that the committee correctly found, and there is no dispute, that Mr. Davis was represented by Mr. Bartholomew at the time the settlement was reached. Because Mr. Davis was represented at the time, the board concluded respondent did not violate Rule 1.8(h).
In determining the sanction for respondent's misconduct, the board found that some of respondent's conduct was knowing, such as his failure to adequately communicate with Ms. Jackson and Mr. Davis. However, it observed the damage caused by respondent appeared to be minimal. In the Batiste matter, it noted Mr. Batiste was able to locate another attorney to pursue his lawsuit in the Court of Claims. In the Jackson/Davis matter, it concluded that, although respondent allowed his clients' actions to prescribe, they suffered little harm. In support, it pointed out Mr. Davis entered into a monetary settlement with respondent, and the record indicated that the value of the claims of Ms. Jackson and her daughter were "minimal."
The board adopted the aggravating and mitigating factors cited by the committee, as well as found the mitigating factor of absence of dishonest or selfish motive. Further, while it pointed out respondent had a prior disciplinary record, it also noted that a considerable amount of time has passed since respondent's prior misconduct. Relying on jurisprudence from this court, the board recommended that respondent be suspended from the practice of law for a period of six months, with three months deferred.
The ODC filed an objection to the board's recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
*180 The record clearly supports the hearing committee's finding that respondent's actions in the Batiste and Jackson/Davis matters violated Rules 1.3 and 1.4. In both instances, respondent failed to communicate with his clients about the status of their cases and neglected their cases.
Like the board, however, we find legal error in the hearing committee's conclusion that respondent's actions in the Jackson/Davis matter violated Rule 1.8(h). There is not much jurisprudence from this court interpreting Rule 1.8(h). A review of this provision indicates it contains two distinct sections. In the first section, the rule prohibits a lawyer from making an agreement "prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement." The prospective agreement contemplated by this section of the rule refers to an agreement made at the beginning of the representation, such as a hold harmless clause. See ABA/BNA'S LAWYER'S MANUAL ON PROFESSIONAL CONDUCT § 51:1104. Clearly, this section of the rule is not implicated in the instant case.
The second section of the rule prohibits a lawyer from settling a malpractice claim with an unrepresented client or former client "without first advising that person in writing that independent representation is appropriate in connection therewith." The language used in this section of the rule suggests the requirement of written notice is triggered upon the actual settlement of the malpractice liability, as opposed to mere negotiations toward a settlement.
In the instant case, respondent's discussions with Mr. Davis and Ms. Jackson arguably constituted the earliest stages of a negotiation toward a settlement, but more likely consisted of an admission of fault and a willingness to pay compensation. There was no discussion of a dollar amount for settlement purposes. The discussions never progressed to the point of a formal offer of settlement by respondent, nor was there acceptance of any offer by his clients. Under these circumstances, we conclude the requirement of Rule 1.8(h), that respondent advise his clients in writing that independent counsel is appropriate, was never triggered.
Having found violations of Rules 1.3 and 1.4, we now turn to consideration of an appropriate sanction. In doing so, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for misconduct involving multiple instances of neglect and failure to communicate is generally a suspension, which is sometimes deferred in part. See In re: Jackson, 02-2764 (La.4/9/03), 842 So.2d 359 (six-month suspension imposed on attorney who neglected and permitted two clients' cases to prescribe); In re: Whitehead, 01-3071 (La.4/12/02), 816 So.2d 284 (one-year suspension, with six months deferred, subject to a six-month probation, imposed on an attorney with a minor prior disciplinary record who neglected three client matters, failed to communicate with the three clients, failed to refund unearned fees to two clients and failed to cooperate with the ODC in two investigations); In re: Holley, 01-1876 (La.10/5/01), 797 So.2d 46 (six-month *181 suspension, with all but sixty days deferred, subject to a one-year period of probation imposed on an attorney who neglected three legal matters, negligently failed to communicate with the clients and negligently failed to refund unearned fees, but provided restitution prior to the complaints being filed); In re: Colwart, 98-2303 (La.11/6/98), 721 So.2d 848 (six-month suspension imposed on an attorney with a prior disciplinary record who failed to communicate with a client, failed to return unearned fees for one year and failed to cooperate with the ODC).
As aggravating factors, we recognize respondent's prior disciplinary record (although we find his prior suspension is fairly remote in time), substantial legal experience, pattern of misconduct and multiple offenses. As mitigating factors, we find respondent has demonstrated a cooperative attitude toward the proceedings and did not act with a dishonest or selfish motive. Additionally, we note respondent made a prompt effort to rectify the consequences of his misconduct in the Jackson/Davis matter and intended to take action to protect his client's interests in the Batiste matter, but was discharged before he could do so.
Under these circumstances, we find the appropriate sanction for respondent's misconduct is a suspension from the practice of law for six months, with three months deferred, followed by one-year period of probation.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Hilliard C. Fazande, II, Louisiana Bar Roll number 9953, be suspended from the practice of law for a period of six months. Three months of the suspension shall be deferred, and respondent shall be placed on unsupervised probation for a period of one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] The original formal charges involved three counts of misconduct. The hearing committee found insufficient evidence to support Count III, relative to respondent's alleged neglect of a legal matter. The disciplinary board concurred in the committee's findings and dismissed the charge. The ODC has not objected to the dismissal of this count; accordingly, we will not discuss it further.
[2] While serving in the Army, Mr. Batiste was found guilty of misconduct by a military court-martial, resulting in a reduction in rank and pay. He sought to file suit against the Army to have his military record amended to show that his demotion would have been suspended if the convening authority had been made aware of a recommendation by the court-martial that the reduction in rank be suspended.
[3] The court construed the letter as a motion for relief from judgment and set the motion for hearing. Ultimately, the court denied Mr. Batiste's motion, essentially on the grounds that it was untimely, but noted the proper relief for Mr. Batiste was to seek malpractice damages.
[4] According to respondent, he did not file the suit because his clients had failed to provide him with their medical records, despite his many requests. Specifically, he contends that in December 1998, two months before the prescriptive date, he had a telephone conversation with Ms. Jackson and Mr. Davis instructing them to forward their medical records to him, and followed up by forwarding two letters by certified mail, return receipt requested. He claims neither forwarded the records or responded in any regard and, based on such, assumed they abandoned their claims. In contrast, Ms. Jackson and her son each testified they did not receive any correspondence from respondent, and that respondent stopped communicating with them several months before the case prescribed.
[5] NOLAC is a nonprofit civil legal aid program which has served the Greater New Orleans community for 36 years.
[6] Ms. Jackson and her minor daughter had only one medical visit resulting from the accident. While respondent offered to settle his malpractice liability with them, the parties were unable to agree on an amount.
[7] Notably, the committee stated that the evidence at the hearing was inadequate to allow the committee to reach a definitive answer regarding whether respondent entered into settlement negotiations with his clients before or after they obtained independent representation.
[8] In 1983, we suspended respondent from the practice of law for a period of two and one-half years stemming from his neglect of four legal matters and misrepresenting facts to his clients relative to the status of their matters when they had been dismissed or compromised in some other respect. Louisiana State Bar Ass'n v. Fazande, 436 So.2d 549 (La. 1983). Additionally, in 1988, respondent received a formal private reprimand for filing pleadings while on suspension. COPR # 9322 (3/17/88). He was also admonished in 1997 for failing to cooperate with the ODC in connection with the investigation of a disciplinary complaint. 98-ADB-067 (5/3/97).
[9] Respondent was admitted to the practice of law in Louisiana in 1971.
[10] Rule 1.8(h) provides:

A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.