143 P.3d 807 (2006)
In re the Matter of the Disciplinary Proceeding Against A. Graham GREENLEE, Bar No. 890, an Attorney at Law.
No. 200,294-3.
Supreme Court of Washington, En Banc.
Argued May 11, 2006.
Decided October 5, 2006.
*808 Phillip H. Ginsberg, Attorney at Law, Seattle, for Petitioner/Appellant.
Kevin M Bank, Washington State Bar Association, Seattle, for Appellee/Respondent.
J.M. JOHNSON, J.
¶ 1 Mr. A. Graham Greenlee appeals the findings and conclusions of the Disciplinary Board (Board) of the Washington State Bar Association (Bar) that he violated former RPC 1.8(h) (2000). The Board's decision was based upon Greenlee instructing his former client, Linda Sanchez-Suwaneh, to sign a waiver and release that settled any legal malpractice claims she had against him without first advising her in writing that it was appropriate for her to consult independent legal counsel. Greenlee was given a six-month suspension.
¶ 2 This court must first decide whether former RPC 1.8(h) includes settlement with former clients of potential malpractice claims where no actual malpractice claim was ever raised or established. This court answers this question in the affirmative. Accordingly, *809 this court also must decide whether the hearing officer and Board properly found that Greenlee's actions violated the rule and whether to adopt the Board's recommended sanctioning of Greenlee for knowing violation of the rule. This court upholds the hearing officer and Board in regard to both questions.

FACTS
¶ 3 Mr. A. Graham Greenlee was admitted to the practice of law in Washington in 1968. Answering Br. of Wash. State Bar Ass'n at 29.
¶ 4 Greenlee represented Sanchez-Suwaneh in a personal injury case arising from an automobile collision. He filed a lawsuit on her behalf against multiple defendants. Sanchez-Suwaneh was "unsophisticated," "partially disabled," and had a limited level of understanding. Clerk's Papers (CP) at 20, 23, 33. She had not progressed beyond the 10th grade and never graduated from high school. Greenlee was "fully aware that she had memory problems and limited understanding as evidenced by the incessant repetition of questions he and his staff were forced to answer for her." CP at 33. Her memory problems did not help matters. She was a difficult client. On or about March 1, 2004, Greenlee withdrew from her case, having reached the end of his patience in dealing with her.
¶ 5 Sanchez-Suwaneh thereafter settled her case on her own with liability insurers, ultimately receiving a settlement check bearing both her name and Greenlee's. Because of his withdrawal, Greenlee waived any fee in the case but sought reimbursement of $1,595 in costs he advanced on his client's behalf.
¶ 6 On March 16, 2004, Sanchez-Suwaneh went to Greenlee's office to obtain his endorsement on the settlement check. Greenlee apparently expected her to thereupon provide repayment of the costs he advanced, but she did not bring the funds with her. Sanchez-Suwaneh and Greenlee, through his paralegal, agreed those costs would be paid from the settlement funds.
¶ 7 Sanchez-Suwaneh also requested written confirmation from Greenlee that she owed him no money other than the $1,595 in costs. Greenlee would only agree to do so if she released him from any claims she might have against him. Accordingly, Greenlee prepared a settlement agreement and mutual release between himself and Sanchez-Suwaneh.
¶ 8 The release, "a six (6) page document written entirely in `legalese' (highly technical language)," provided that Sanchez-Suwaneh agreed to reimburse Greenlee the $1,595 in costs, that he disclaimed any further financial obligations owing from her to him, and that she agreed to waive any claims she might have against him. CP at 21. The release states the agreement is a final settlement of "mutual claims and causes of action against one another," and that Sanchez-Suwaneh agreed to extinguishment of "any and all claims she may have against A. Graham Greenlee arising out of the services he provided in his representation." Bar Ex. 3, at 1-2. The settlement agreement and mutual release further provided that the parties:
[F]orever discharge each other from and against all actions, causes of action, claims, suits, debts, damages, judgments, and demands whatsoever, whether matured or unmatured ... whether now known or unknown, that Linda Sanchez-Suwaneh or A. Graham Greenlee now has or may have... at any time prior to and including the date of this Agreement or hereafter can, shall, or may have or claim to have, arising out of or relating to the subject motor vehicle accident and costs, and any other matter described herein.
Id. at 3-4.
¶ 9 Sanchez-Suwaneh signed the release in Greenlee's reception area. She had no independent counsel review it with her before signing and was not advised by Greenlee in writing that it was appropriate to do so.

DISCIPLINARY PROCEDURAL HISTORY
¶ 10 On September 13, 2004, the Bar filed a formal complaint against Greenlee. The Bar alleged he violated former RPC 1.8(h) by having former client Sanchez-Suwaneh sign the release to settle any malpractice claims *810 she might have against him without first advising her in writing that it was appropriate to consult independent legal counsel.
¶ 11 A disciplinary hearing took place in December 2004. Sanchez-Suwaneh testified that if she had been notified in writing to consult independent counsel, she would have done so. She further testified that at the time she signed the release she was under stress and rushed and did not know exactly what she was signing. Sanchez-Suwaneh apparently believed at that time that she had claims against Greenlee for the way he represented her.
¶ 12 The hearing officer issued findings of fact, conclusions of law, and a recommendation on January 18, 2005. Amended findings of fact, conclusions of law, and recommendation were filed by the hearing officer on February 7, 2005. Ultimately, the hearing officer found that Greenlee engaged in a knowing conflict of interest in violation of former RPC 1.8(h).
¶ 13 As stated by the hearing officer:
The thrust of RPC 1.8(h) is to prevent the lawyer from obtaining any release of claims from an unrepresented client without written notice to seek the advice of counsel because, by seeking a release of his own liability, the lawyer places himself in direct conflict with the unrepresented client. The rule is not intended to burden the client with the duty to ascertain and evaluate the legal technicalities of whether a claim exists.
CP at 29 (para.26). The hearing officer relied primarily on In re Carson, 268 Kan. 134, 991 P.2d 896 (1999) for the proposition that a malpractice claim need not be pending for a violation of former RPC 1.8(h).
¶ 14 Specifically, the hearing officer found, "[i]t is obvious Greenlee's sole motivation was to obtain her release of any and all liability claims she might, even potentially, have against him." CP at 26. The hearing officer also found it was "unthinkable that Mr. Greenlee would not immediately comply with this simple request [for written assurance that she owed him nothing further] by a former client he well knew had limited understanding, instead of hiding his true intent to advantage himself in a complicated six (6) page release Sanchez-Suwaneh had little hope of actually understanding." CP at 27.
¶ 15 The hearing officer recommended a one-year suspension. Following briefing, the matter was argued to the Board in May 2005. On July 1, 2005, the Board, by a vote of 8-3, adopted the hearing officer's decision, except for a reduction in the sanction recommendation to six months. On September 7, 2005, the Board filed a clarification of its decision in which the three dissenting members explained they voted against the majority because they "would have approved [the] hearing officer's decision," i.e., they believed a one-year suspension to be the appropriate sanction. Supplemental Clerk's Papers (SCP) at 11-12. Greenlee has been disciplined six times previously.[1]

STANDARD OF REVIEW
¶ 16 When a lawyer discipline decision by the Board is appealed, this court has "plenary authority" on review. In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 716, 72 P.3d 173 (2003). This court gives "`serious consideration' to the Board's recommendation." In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 742, 122 P.3d 710 (2005). Nonetheless, while we do "not lightly depart from the Board's recommendation," we are "not bound by it." In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 565, 9 P.3d 822 (2000). This court reviews conclusions of law de novo. Whitt, 149 Wash.2d at 716-17, 72 P.3d 173. We have "the inherent power to promulgate rules of discipline, to interpret them, and to enforce them." In re Disciplinary Proceeding Against Stroh, 97 Wash.2d 289, 294, 644 P.2d *811 1161 (1982) (emphasis added). This court upholds the hearing officer's findings of fact if they are supported by substantial (albeit disputed) evidence. In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 568, 974 P.2d 325 (1999). Factual findings that are unchallenged on appeal are accepted as verities. In re Disciplinary Proceeding Against Christopher, 153 Wash.2d 669, 677, 105 P.3d 976 (2005).

ANALYSIS

A. Interpretation of Former RPC 1.8(h)

¶ 17 Greenlee argues that former RPC 1.8(h) does not extend to settlement with former clients of potential malpractice claims where no actual claim is made or proved. He argues that at the very least, former RPC 1.8(h) should be given only prospective application to cover such scenarios. The Bar disputes Greenlee's interpretation, urging this court to uphold the Board. Both the Board and the hearing officer below found that former RPC 1.8(h) includes settlement of potential malpractice claims even where no actual claim is made or proved. For reasons that follow, we hold that former RPC 1.8(h) does include settlement of potential malpractice claims even where no actual claim is made or proved.
¶ 18 Former RPC 1.8(h) states that a lawyer shall not:
make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.
There is no disciplinary case in Washington interpreting former RPC 1.8(h).
¶ 19 The Washington Board of Governor's established an Ethics 2003 Committee to review the Model Rules of Professional Conduct (MRPC) changes made by the ABA. The Board reviewed the Ethics 2003 Report, made additional revisions, and submitted recommended amendments to this court. By order of December 2004, this court approved the proposed amendments for publication. But this court had not yet adopted any of the Board's proposed amendments at the time of the events at issue in this case. One of the proposed revisions was a restructuring of former RPC 1.8(h) to conform to the MRPC equivalent:
(h) A lawyer shall not:
(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or
(2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.
ABA & BUREAU OF NAT'L AFFAIRS, INC., LAWYERS' MANUAL ON PROFESSIONAL CONDUCT 01:127 (2003).
¶ 20 Whereas Washington former RPC 1.8(h) provides that a lawyer shall not "settle a claim for such [malpractice] liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate," newly adopted subsection (h)(2) provides that a lawyer shall not "settle a claim or potential claim . . . unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel." The adopted change to RPC 1.8(h), to specifically include settlement of "potential" malpractice claims, seems to indicate that settlement of potential claims did not fall within the ambit of former RPC 1.8(h).
¶ 21 As indicated above, there is no disciplinary case in Washington interpreting former RPC 1.8(h). Court decisions construing identical provisions from other states, cited by the parties in this case, appear to be in conflict.
¶ 22 Greenlee relies upon In re Douglass, 859 A.2d 1069 (D.C.2004), which squarely addressed whether District of Columbia RPC 1.8(g), analogous to ABA MRPC 1.8(h), precluded *812 the release of potential claims of liability for services already rendered, and likewise clearly defined the term "prospective." As to the first clause, the District of Columbia Court of Appeals affirmed a finding that the term "prospectively," "strongly suggests that the Rule was intended to reach lawyers who insist that clients sign malpractice liability releases at the beginning of the representation." Id. at 1072 n. 7. By contrast, the District of Columbia Court of Appeals held the second clause "addresses the situation where the lawyer attempts to settle an actually existing claim (even a claim that has not been filed in court) for malpractice liability." Id. at 1083. That court stated that its analysis is supported by ABA MRPC 1.8(h). See id. at 1083 n. 3.
¶ 23 Greenlee likewise points to In re Fazande, 864 So.2d 174 (La.2004). In that case, the Louisiana Supreme Court held the first section of Louisiana RPC 1.8(h) contemplates prospective agreement made at the beginning of the representation, whereas the second section "prohibits a lawyer from settling a malpractice claim with an unrepresented client or former client `without first advising that person in writing that independent representation is appropriate in connection therewith."' Id. at 180 (quoting LAWYERS' MANUAL ON PROFESSIONAL CONDUCT, supra, § 51:1104). The Louisiana Supreme Court went on to state that the latter section suggests "the requirement of written notice is triggered upon the actual settlement of malpractice liability, as opposed to mere negotiations toward a settlement." Id.
¶ 24 The Bar, however, insists that the section from Douglass that Greenlee relies upon is dicta. The Bar argues the District of Columbia Court of Appeals nowhere states that RPC 1.8(h) applies only if a malpractice claim has already been filed and that it also makes clear the second clause of the rule would apply to a claim that has not been filed in court. See Douglass, 859 A.2d at 1083. Also, the Bar argues that Fazande does not stand for the proposition that a malpractice claim must have already been filed for former RPC 1.8(h) to apply. The Louisiana Supreme Court held that the requirement of Louisiana RPC 1.8(h) was never triggered under the circumstances of that case. Fazande, 864 So.2d at 180.
¶ 25 The Bar suggests that we instead look to In re Carson, 268 Kan. 134, 991 P.2d 896 (1999), on which the hearing officer relied. See CP at 27-28. In that case, a former client was advised by the judge to consult independent counsel before signing the mutual release, but the client did not do so. Carson, 268 Kan. at 136, 991 P.2d 896. The Kansas Supreme Court held that "[i]t does not matter that no actual claim existed" when the waiver was signed. Id. at 143, 991 P.2d 896.
¶ 26 Greenlee counters that Carson "does not relate to waivers for services already rendered where there is no basis for a claim of malpractice." Br. of Attorney Greenlee at 13. Greenlee claims Carson is distinguishable because the attorney in that case had ample reason to conceal his conduct, whereas Greenlee contends that he himself had no awareness of any wrongdoing. He cites the hearing officer's concession that "Greenlee believed in good faith that his work on the personal injury case was not negligent. Thus, he was not trying to cover up negligence he knew existed." CP at 39 n. 16.
¶ 27 Also pertinent here is this court's recent decision in In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 338, 126 P.3d 1262 (2006). We were confronted with an attorney acting pro se who was subject to sanctions for violation of RPC 4.2(a) for his contacting a party who was represented by counsel. This court found a dearth of case law from this state construing the rule at issue. Id. at 336, 126 P.3d 1262. We observed that conflicting authorities interpreting the rule existed at the time the attorney subject to discipline engaged in the conduct at issue. Id. at 336-37, 126 P.3d 1262. As a result, we held RPC 4.2(a) impermissibly vague in its application to the attorney subject to discipline, and therefore insisted that the interpretation of the rule as prohibiting attorneys acting pro se to contact a party represented by counsel would be applied prospectively only. Id. at 338, 126 P.3d 1262. Arguably, considerations similar to those in Haley are present in this case, *813 suggesting only a prospective application of former RPC 1.8(h) as prohibiting attorneys from settling with former clients of potential malpractice claims where no actual malpractice claim was ever raised or established.
¶ 28 To be sure, former RPC 1.8(h) does not require a claim to actually be filed for the second section of the rule to apply. The rule does apply if an unfiled claim clearly exists, which could be filed at a future time.
¶ 29 One of the primary purposes of attorney discipline is the protection of the public from attorney misconduct, and disciplinary rules should be interpreted to advance that purpose. In re Disciplinary Proceeding Against McGlothlen, 99 Wash.2d 515, 522, 663 P.2d 1330 (1983). As a general matter, the rule seeks to protect unrepresented clients when a lawyer seeks release of liability in situations where the lawyer's interests either directly conflict or have the potential to directly conflict with the client's interests.
¶ 30 Accordingly, this court holds that former RPC 1.8(h) includes settlement with former clients of potential malpractice claims where no actual malpractice claim was ever raised or established. Attorneys should advise the client or former client in writing to obtain the advice of independent counsel prior to signing a release of any claims the client or former client has or may have against the lawyer.
¶ 31 We do not find the decisions of other states to be particularly helpful to this case. As the Supreme Court of this state, this court will interpret its own rules.
¶ 32 As an initial matter, it is inappropriate to demand that the RPC's literal terms cover every conceivable particular instance of conduct. To be sure, the words of the rule have primacy, and this court cannot countenance rulings tantamount to ex post facto laws. But where an RPC lays down a rule or principle for application in particular cases with enough specificity to satisfy due process and vagueness concerns, this court is reluctant to allow attorneys to escape discipline through an overreliance upon prospective-only applications.
¶ 33 Furthermore, there is a crucial difference between Haley and this case. Haley involved an attorney who was asserting a right of self-representation. 156 Wash.2d 324, 126 P.3d 1262. Haley involved consideration of the extent to which RPC 4.2(a) related to the exercise of that right. Id. Prospective application of our interpretation of RPC 4.2(a) was more appropriate in light of an attorney's right of self-representation. Here, by contrast, Greenlee was not acting in furtherance of any specific right. Attorneys do not have a positive, protected right to instruct or request former clients to sign waivers of potential malpractice claims.

B. Application of Former RPC 1.8(h)

¶ 34 Greenlee also challenges the hearing officer's finding that his conduct violated former RPC 1.8(h). We rule that the hearing officer's holding constituted a proper application of the rule.
¶ 35 This court reviews conclusions of law de novo. Whitt, 149 Wash.2d at 716-17, 72 P.3d 173. This court upholds the hearing officer's findings of fact if they are supported by substantial (albeit disputed) evidence. Huddleston, 137 Wash.2d at 568, 974 P.2d 325. Factual findings that are unchallenged on appeal are accepted as verities. Christopher, 153 Wash.2d at 677, 105 P.3d 976.
¶ 36 As will also be discussed in the following section, Greenlee did not challenge the hearing officer's factual finding that Greenlee's "sole motivation" in making Sanchez-Suwaneh sign the release "was to exculpate himself on the chance [Sanchez-Suwaneh's] unhappiness with him led her to take further action." CP at 42. The hearing officer also found Greenlee not credible in his claim of negligence, not reading the release prior to giving it to Sanchez-Suwaneh. CP at 32.
¶ 37 The hearing officer's findings are supported by substantial evidence in the record. The record amply supports the conclusion that Greenlee's actions were intended to limit potential claims against him for malpractice liability.

C. Board Sanction Recommendation

¶ 38 Greenlee alternatively argues the Board's six-month suspension recommendation should be rejected and that admonition *814 is the appropriate sanction. He insists that admonition suffices because of his purported negligent mental state and the lack of actual injury to Sanchez-Suwaneh. The Bar defends the Board's recommendation. We affirm the Board's recommendation of a six-month suspension.
¶ 39 This court has determined that the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) guides our determination of appropriate sanctions in Bar disciplinary cases. See Haley, 156 Wash.2d at 339, 126 P.3d 1262; In re Disciplinary Hearing Proceeding Against Halverson, 140 Wash.2d 475, 492, 998 P.2d 833 (2000). Under ABA Standards, after misconduct is found, the court performs a two-part analysis. Halverson, 140 Wash.2d at 492-93, 998 P.2d 833. First, the court determines the presumptive sanction based on the ethical duty violated, the attorney's mental state, and the extent of actual or potential harm caused by the conduct. Id. Second, the court considers aggravating factors, which may alter the presumptive sanction or decrease or lengthen a suspension. Id. at 496, 998 P.2d 833. See ABA Standards stds. 9.22, 9.32, at 49-50. The court will generally adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other cases or the Board was not unanimous in its decision. Haley, 156 Wash.2d at 339, 126 P.3d 1262.

1. Presumptive Sanction of Suspension
¶ 40 Standard 4.32 of ABA Standards provides:
Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to the client.
Knowledge is "`the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.'" Longacre, 155 Wash.2d at 743, 122 P.3d 710 (quoting ABA Standards at 17). Conscious knowledge that particular conduct violates the RPC is not a prerequisite to showing a respondent's conduct is knowing. In re Disciplinary Proceeding Against Egger, 152 Wash.2d 393, 416, 98 P.3d 477 (2004) (noting knowledge can be established in conflict of interest cases where attorney consciously enters into the conflicted transaction). State of mind is a factual determination, and the hearing officer's firsthand determination is respected. See Longacre, 155 Wash.2d at 744, 122 P.3d 710.
¶ 41 Here, Greenlee did not challenge the hearing officer's factual finding that Greenlee's "sole motivation" in making Sanchez-Suwaneh sign the release "was to exculpate himself on the chance [Sanchez-Suwaneh's] unhappiness with him led her to take further action." CP at 42. The hearing officer also found Greenlee not credible on the issue of his supposed negligence in not reading the release prior to his giving it to Sanchez-Suwaneh. CP at 32. This, despite a finding that "Greenlee believed in good faith that his work on the personal injury case was not negligent," and that "he was not trying to cover up negligence he knew existed." CP at 39 n. 16. This court respects credibility determinations of the hearing officer who has direct contact with the witnesses. In re Disciplinary Proceeding Against Kagele, 149 Wash.2d 793, 814, 72 P.3d 1067 (2003).
¶ 42 Under ABA Standards, "[i]njury" is defined as "harm to a client, the public, the legal system, or the profession." ABA Standards Definitions at 17. Potential injury is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." Id. "We give `particularly great weight' to the question of the extent of injury involved due to the attorney's misconduct." In re Disciplinary Proceeding Against Dann, 136 Wash.2d 67, 79, 960 P.2d 416 (1998) (quoting In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 772, 801 P.2d 962 (1990)). But as this court has also held, in disciplinary proceedings, no actual harm need be shown. Halverson, 140 Wash.2d at 486, 998 P.2d 833.
*815 ¶ 43 Here, the hearing officer appropriately found Sanchez-Suwaneh suffered potential injury by being made to sign a release of her rights by a lawyer who had superior knowledge, without obtaining the required written advice to consult independent counsel. CP at 35, 40-41. Had Sanchez-Suwaneh subsequently decided to sue Greenlee for malpractice, she could have reasonably been discouraged from doing so after viewing the release she had signed. She was not sophisticated, partially disabled, and understood matters better when in writing. CP at 23, 33. Additionally, the hearing officer appropriately found Greenlee's actions harmed the legal profession because he exploited his client's vulnerability to obtain a release from her. CP at 35, 40-41.

2. Aggravating Factors
¶ 44 The hearing officer found five aggravating factors. These include: prior disciplinary offenses,[2] selfish motive,[3] bad faith obstruction of proceeding by intentionally failing to comply with the rules of disciplinary agency,[4] vulnerability of victim,[5] and substantial experience in the practice of law.[6] The only mitigating factor found by the hearing officer was remoteness of Greenlee's 1983 and 1985 disciplinary actions. The many significant aggravating factors in this case are not outweighed by the mitigating factor.

3. Proportionality and Board Unanimity
¶ 45 Having established the presumptive sanction and weighing the mitigating and aggravating factors, this court considers whether proportionality and Board unanimity factors compel an altering of the Board's recommendation. We uphold the Board's recommendation of a six-month suspension.
¶ 46 This court does not find that a downward departure from the presumptive sanction of suspension would be disproportionate under the circumstances. The three dissenting members in the September 7, 2005, vote later clarified that they voted against the majority because they believed a longer, one-year suspension would have been more appropriate than a six-month suspension. SCP at 11-12. Thus, while we do give less credence to decisions of a divided board, Haley, 156 Wash.2d at 343, 126 P.3d 1262; Whitt, 149 Wash.2d at 723, 72 P.3d 173, the Board's division here is not relevant to determining whether a downward departure from the presumptive sanction of suspension is warranted. The potential injury to Sanchez-Suwaneh and the harm to the legal profession warrants the lower six-month suspension.

CONCLUSION
¶ 47 This court finds that former RPC 1.8(h) includes settlement with former clients of potential malpractice claims where no actual malpractice claim was ever raised or established. We also hold that the hearing officer and Board properly found that Greenlee's actions violated the rule. Finally, we adopt the Board's recommended sanctioning of Greenlee with a six-month suspension for knowing violation of the rule.
Concurring: ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, OWENS, CHAMBERS and FAIRHURST, JJ.
*816 SANDERS, J. (dissenting).
¶ 48 The majority concludes former RPC 1.8(h) (2000) prohibits an attorney from settling a potential malpractice claim with a former client where no malpractice is asserted. I disagree. Absent some assertion of malpractice, the settlement of potential claims with former clients is not within the ambit of former RPC 1.8(h).[1] Indeed I do not see how an attorney can settle a nonexistent claim. The disciplinary board's ruling to the contrary should be overturned.
¶ 49 As the majority tacitly acknowledges, only the second clause of former RPC 1.8(h) applies to this case. Majority at 813. The rule has two clauses  one addressing the prospective limitation of liability as to clients and one addressing the settlement of claims as to clients or former clients. The rule thus "distinguish[es] between prospective limitation of liability  which is severely restricted  and settlement or defense when a malpractice claim has actually been made." 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT § 12.18 at 12-48 (3d ed. 2001 & Supp.2002) (second emphasis added); see also ABA & BUREAU OF NAT'L AFFAIRS, INC., LAWYERS' MANUAL ON PROFESSIONAL CONDUCT § 51:1102 (2006). Here A. Graham Greenlee withdrew from his representation of Ms. Sanchez-Suwaneh before the date of their mutual release. Clerk's Papers (CP) at 20-22. Because Sanchez-Suwaneh was no longer Greenlee's client, only the second clause of former RPC 1.8(h) applies.
¶ 50 The second clause of former RPC 1.8(h) is quite clear. A lawyer "[s]hall not... settle a claim for such [malpractice] liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith." Former RPC 1.8(h) (emphasis added). Court rules are read "as though they were drafted by the Legislature." Nevers v. Fireside, Inc., 133 Wash.2d 804, 809, 947 P.2d 721 (1997). Therefore we give them "their ordinary meaning, reading the language as a whole and seeking to give effect to all of it." Heinemann v. Whitman County, 105 Wash.2d 796, 802, 718 P.2d 789 (1986). In its nominal form, "claim" means "an authoritative or challenging request: demand ... a demand of a right or supposed right ... a calling on another for something due or supposed to be due." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 414 (2002).[2] "`Claim,' in its primary meaning, is used to indicate the assertion of an existing right. In its secondary meaning, it may be used to indicate the right itself." Orenberg v. Thecker, 79 U.S.App. D.C. 149, 143 F.2d 375, 377 n. 6 (D.C.Cir.1944) (emphasis omitted). At minimum then, the plain language of former RPC 1.8(h) requires an assertion of malpractice  put simply, something for the attorney to settle. But as the hearing officer recognized, Greenlee "believed in good faith that his work on the personal injury case was not negligent." CP at 39 n. 16 (Amended Findings of Fact, Conclusions of Law and Hearing Officer's Recommendation). Sanchez-Suwaneh apparently made no assertion to the contrary. She suffered no actual injury. Id. at 23. There was therefore nothing for them to settle and no violation of former RPC 1.8(h).
¶ 51 The conclusion that former RPC 1.8(h) does not apply is bolstered by the recent changes to the Rules of Professional Conduct. The new rules inarguably prohibit the settlement of potential claims by the addition of the words "or potential claim." *817 RPC 1.8(h)(2).[3] The majority concedes this change "seems to indicate that settlement of potential claims might not currently fall within the ambit of RPC 1.8(h)." Majority at 811. Finding little support in out-of-state case law, the majority nevertheless announces "this court will interpret its own rules" and holds potential claims to have always been a part of the rule. Majority at 813. But if our own precedent is to be given effect, court rules are to be read "as though they were drafted by the Legislature." Nevers, 133 Wash.2d at 809, 947 P.2d 721. And "a court must not add words where the legislature has chosen not to include them." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 682, 80 P.3d 598 (2003). The addition of "or potential claims" does not support the argument potential claims have always been a part of the rule, but rather the inverse.
¶ 52 While my disagreement with the majority appears settled with the addition of RPC 1.8(h)(2), Greenlee is entitled to notice of his responsibilities as provided under the former rule. Importantly he has a constitutionally protected property interest in his professional license. Nguyen v. Dep't of Health, 144 Wash.2d 516, 522-23, 29 P.3d 689 (2001). Even absent this interest, professional discipline must comport with procedural due process. In re Ruffalo, 390 U.S. 544, 550-51, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (professional discipline is "quasi-criminal" in nature). Here the majority has short-circuited the amendment to the Rules of Professional Conduct and read into former RPC 1.8(h) a constraint absent until RPC 1.8(h)(2) went into effect. But "[l]awyers should not have to read slip opinions to divine their professional obligations." In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 347, 126 P.3d 1262 (2006) (Sanders, J., concurring). Requiring otherwise injures the very rule-making process the majority seeks to enforce; for "[w]e may not expand the scope of a rule by fiat." Id. at 346, 126 P.3d 1262. Because Greenlee had no responsibility under former RPC 1.8(h) to avoid the settlement of nonexistent claims, he should not be disciplined.
¶ 53 I dissent.
NOTES
[1] Greenlee received a 90-day suspension in 2002 for failing to deliver client funds promptly, a censure in 1999 for settling a client's case without authorization, a 30-day suspension in 1996 for failing to communicate and abide by his client's decision regarding settlement offers, a reprimand in 1985 for failing to cooperate with the Bar, a censure in 1985 for failing to cooperate, and a censure in 1983 for negotiating a settlement after being discharged and then claiming a fee based on the settlement offer. See Bar Exs. 17-22.
[2] ABA STANDARDS std. 9.22(a) at 49. See also supra note 1, at 7. History of prior discipline is a substantial aggravator. CP at 38, 44. See, e.g., In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 261, 66 P.3d 1057 (2003).
[3] ABA STANDARDS std. 9.22(b) at 49. See also supra, at 17 (noting Greenlee's failure to challenge the hearing officer's finding of fact that Greenlee's "sole motivation" in making Sanchez-Suwaneh sign the release "was to exculpate himself on the chance [Sanchez-Suwaneh's] unhappiness with him led her to take further action" (citing CP at 42)).
[4] ABA STANDARDS std. 9.22(e) at 49. The hearing officer applied this aggravating factor based on Greenlee's failure to respond to Bar requests for information absent a threat of deposition and repeated avoidance of service of process. CP at 39-40. The hearing officer found Greenlee's conduct amounted to "playing games" by using back or private entrances to his office, the combination of which demonstrated repeated disregard for the lawyer discipline process. Id.
[5] ABA STANDARDS std. 9.22(h) at 49. See supra, at 20-21. This court has listed physical or mental disability as one form of vulnerability. In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 606, 48 P.3d 311 (2002).
[6] ABA STANDARDS std. 9.22(i) at 49. Greenlee has been practicing law since 1968.
[1] We have recently considered and ratified changes to former RPC 1.8(h) (2000) based on similar changes to the ABA Annotated Model Rules of Professional Conduct (5th ed.2003). Our changes became effective September 1, 2006. See adoption of RULES OF PROFESSIONAL CONDUCT, 157 Wash.2d 1139.
[2] Webster's further defines "claim" as "a demand for compensation, benefits or payment ... the amount or payment of such a demand ... a privilege to something: right; specif: a title to any debt, privilege, or other thing in the possession of another: an assertion, statement, or implication (as of value, effectiveness, qualification, eligibility) often made or likely to be suspected of being made without adequate justification." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 414 (2002).
[3] "A lawyer shall not ... settle a claim or potential claim for such [malpractice] liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith." Amendment to RPC 1.8(h), 157 Wash.2d 1200 (Official Advance Sheet No. 4, August 15, 2006) (emphasis added).