*1118 ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Gasper J. Schiro, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Harry Witt went to respondent in 1983 seeking representation in connection with a personal injury matter involving the City of New Orleans (“City”). Respondent, who was an elected official in Orleans Parish, was concerned he might have a potential conflict of interest in representing Mr. Witt against the City. Accordingly, respondent asked another attorney, Olga Kogos, to handle Mr. Witt’s ease.[1]
Although Ms. Kogos enrolled as Mr. Witt’s attorney of record, Mr. Witt had no further contact with her following the first meeting set up by respondent. Respondent continued to be involved in the case, acting as a liaison between Mr. Witt and Ms. Kogos. He drafted the petition for damages and, after Ms. Kogos signed it, filed the petition with the court in 1983. Thereafter, the case remained dormant for several years.[2]
LAt some point during her handling of the case, Ms. Kogos became seriously ill. Thereafter, respondent took a greater role in the case, although he never formally enrolled as counsel of record for Mr. Witt. In 1994, respondent filed a motion to set the case for trial and a motion to set a pretrial conference but never officially enrolled as counsel of record. Respondent also wrote several letters to the City’s legal department in an attempt to reach a settlement. After Ms. Kogos died sometime in the late 1990’s, respondent continued to seek an out of court settlement with the City.
By 2001, Mr. Witt had become frustrated with the lack of progress in his case. In the fall of 2001, Mr. Witt advised respondent that he intended to file a disciplinary complaint against respondent with the ODC. Following that communication, respondent discussed giving Mr. Witt $2,000 out of his own pocket in light of the City’s refusal to settle the matter. Mr. Witt did not accept the $2,000 and instead filed the complaint with the ODC on January 31, 2002. The complaint essentially alleged respondent failed to pursue Mr. Witt’s case with diligence and failed to communicate with Mr. Witt in regard to the status of the case.
*1119 Respondent filed a timely response to the complaint, denying he was Mr. Witt’s attorney in the matter. He admitted to speaking with Mr. Witt “from time to time” but claimed he was only trying to help a “political supporter and a friend” and “should not be considered his attorney.” Furthermore, respondent asserted he never signed a contract with either Mr. Witt or Ms. Kogos and never received any legal fees for the case, although he indicated that he had intended to share fees with Ms. Kogos in the event the case settled.
¡..¡Thereafter, respondent gave a sworn statement to the ODC. He claimed that when Mr. Witt first came to him, Mr. Witt told respondent that he could help him politically. He further claimed Mr. Witt had in fact helped him in past elections by putting up a sign and talking to people. He went on to state that he was not really Mr. Witt’s attorney even though he never informed Mr. Witt of that fact in writing.
Respondent also told the ODC that he filed the motions in the case at the urging of Mr. Witt because nothing was happening and he wanted to help. Respondent was worried that Ms. Kogos’s illness was delaying the case and decided to take some action. He further admitted that he knew some of the assistant city attorneys, so he attempted to negotiate a settlement through them. However, he continued to assert that Ms. Kogos was the attorney of record, claiming he thought of Mr. Witt more as a friend than a client. Respondent stated that he offered Mr. Witt the $2,000 out of his own pocket because he “didn’t want any trouble” while he was trying to qualify to run for re-election.[3]
Mr. Witt gave a sworn statement to the ODC in which he indicated that he assumed respondent and Ms. Kogos were partners, stating “I just left everything in [respondent’s] hands.” He further stated that he asked respondent numerous times over the years to either get a court date or settle the case. Respondent’s response was always that it would be next week or he would take care of it next week, leading Mr. Witt on and giving him false hope by implying that the case would settle very soon. This was extremely frustrating for Mr. Witt and caused him to worry and lose sleep. Furthermore, Mr. Witt called respondent “hundreds” of times, asserting that respondent returned only one out of every fifteen or twenty calls.
^DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed one count of formal charges against respondent, alleging his conduct violated the following Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a)(b) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4(a)(b) (failure to communicate with a client), 1.7(b) (conflict of interest), 1.8(h) (improperly settling a malpractice claim with an unrepresented client), 3.2 (failure to make reasonable efforts to expedite litigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
In his answer to the formal charges, respondent denied the allegations and provided a memorandum in support of his opposition to the formal charges.

*1120
Formal Hearing

This matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee. The ODC introduced a binder of documentary evidence, including an audiotape of several conversations between respondent and Mr. Witt, in support of the formal charges. Respondent adopted the ODC’s exhibits as his own. Both respondent and Mr. Witt testified in person before the committee.

Hearing Committee Recommendation

Considering the evidence presented at the hearing, the hearing committee made a finding of fact that respondent agreed to handle Mr. Witt’s personal injury matter. [sIt found that because of concerns over a possible conflict of interest with the City, respondent never enrolled as counsel of record and asked Ms. Kogos to become involved in the case. However, the committee found that Mr. Witt believed respondent was his attorney throughout the representation. It further noted respondent admitted he would share attorney fees with Ms. Kogos if the case ultimately settled. Considering these facts, the committee concluded respondent acted as Mr. Witt’s attorney.
The committee found the last formal action taken by respondent in the case occurred in 1994, when he filed a motion for pre-trial conference. It determined that after 1994, the only actions taken by respondent in the case were informal settlement discussions with the City. It further found that in 2001, when Mr. Witt expressed dissatisfaction over the progress of the case, respondent acted improperly by offering him $2,000 out of his pocket.
Based on these facts, the committee found respondent failed to act with competence and diligence, in violation of Rules 1.1 and 1.3. In addition, it found he failed to communicate with his client in violation of Rule 1.4(a)(b) and failed to make reasonable efforts to expedite the litigation in violation of Rule 3.2. Finally, it determined he improperly attempted to settle his malpractice liability, violating Rules 1.8(h) and Rule 8.4(c). However, the committee did not find clear and convincing evidence to support the violation of the conflict of interest provisions (Rules 1.7 and 1.8), nor did it find he engaged in conduct prejudicial to the administration of justice for purposes of Rule 8.4(d).
The committee determined that respondent violated duties owed to his client, the public, and the profession. Citing the ABA Standards for Imposing Lawyer 1 (¡Sanctions,[4] it concluded the baseline sanction for respondent’s misconduct was a suspension.
As aggravating factors, the committee recognized respondent had a prior disciplinary offense (a private reprimand in 1986 for neglecting a client’s civil litigation matter), dishonest or selfish motive, pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. The committee found no mitigating factors.
Accordingly, the committee recommended that respondent be suspended from the practice of law for a period of one year and one day to be followed by two years of probation and attendance at the *1121 Louisiana State Bar Association Ethics School.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board determined that the hearing committee’s factual findings were not manifestly erroneous. The board also accepted the committee’s legal finding that respondent violated Rules 1.1(a), 1.3, 1.4(a)(b), and 3.2 of the Rules of Professional Conduct by failing to represent Mr. Witt in a competent manner, failing to communicate with him and failing to pursue the matter diligently. Likewise, the board agreed with the committee’s finding that respondent did not act outside the scope of his representation by pursuing a settlement, that his position as an elected parish official did not create a conflict of interest in his representation of Mr. Witt against the City of New Orleans, and that his actions were not prejudicial to the administration of justice even though they did jeopardize Mr. 17Witt’s case. However, the board rejected the committee’s finding that respondent acted in an improper or dishonest manner in attempting to settle his malpractice liability in violation of Rules 1.8(h) and 8.4(c).
The board adopted the aggravating factors of prior disciplinary offenses, refusal to acknowledge the wrongful nature of conduct, and substantial experience in the practice of law found by the committee. However, the board rejected the committee’s findings of a pattern of misconduct (noting there was neglect in only one matter), dishonest or selfish motive, and vulnerability of victim. In mitigation, the board recognized respondent’s full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings. It also recognized that respondent has practiced law for forty-three years, with only one prior and remote disciplinary infraction.
Turning to the issue of an appropriate sanction for respondent’s misconduct, the board agreed with the committee that the baseline sanction was suspension. Considering the mitigating factors, the board recommended respondent be suspended from the practice of law for one year with six months deferred.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the 1 shearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the factual findings of the hearing committee as modified by the disciplinary board. Although respondent was not Mr. Witt’s counsel of record, he clearly took actions in the case which led Mr. Witt to reasonably assume respondent was his attorney. The record also supports the conclusion that respondent failed to provide competent representation, failed to adequately communicate with Mr. Witt regarding the status of the case and failed to act with diligence during the representation, taking only sporadic actions during the nearly twenty years when the case was pending. However, we find there is no clear and convincing evidence in the record indicating the ODC proved a conflict of interest between respondent’s position as a parish official and his representation of Mr. Witt or that respondent attempted to settle his malprac *1122 tice liability in an improper or dishonest manner.[5]
Having found professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
loA review of this court’s jurisprudence indicates that under similar facts, this court has imposed suspension ranging from six months to one year and one day. See, e.g., In re: Dunn, 98-0535 (La.6/5/98), 713 So.2d 461; In re: Mitchell, 02-2581 (La.11/8/02), 831 So.2d 901; In re: Dean, 03-2478 (La.1/21/04), 864 So.2d 152; and In re: Holmes, 03-1959 (La.9/19/03), 855 So.2d 736.
In fashioning an appropriate sanction in this case, we note that the record as a whole suggests respondent’s actions were not motivated by any dishonest or selfish motive. Rather, it appears undisputed that respondent acted out of a genuine desire to assist Mr. Witt, who was his friend and political supporter. While respondent’s lack of dishonest intent in no way excuses his failure to conduct the representation in a competent and diligent manner, it serves to mitigate the severity of the sanction. We also find that respondent exhibited a cooperative attitude during these disciplinary proceedings.
In aggravation, we recognize respondent has substantial experience in the practice of law and one prior disciplinary infraction (a reprimand in 1986). However, the effect of this latter factor is tempered because the prior discipline is remote in time and is the only blemish on respondent’s otherwise spotless forty-three year practice.
Under these circumstances, we find the appropriate sanction for respondent’s misconduct is a suspension from the practice of law for a period of one year. However, in light of the mitigating factors, we will defer six months of this suspension and place respondent on unsupervised probation for a period of one year, subject to the condition that any misconduct during the period of probation may be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate.
ImDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Gasper J. Schiro, Louisiana Bar Roll number 11782, be suspended from the practice of law for a period of one year. It is further ordered that six months of this suspension shall be deferred. Following completion of the active portion of his suspension, respondent shall be placed on unsupervised probation *1123 for a period of one year, subject to the condition that any misconduct during the period of probation may be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
Rehearing Denied.

. Additionally, respondent later acknowledged he had little experience in personal injury cases and trial work, which was another reason he requested that Ms. Kogos handle the case.

. At the time the suit was filed, there was no requirement that a service of process be made within any specific period of time. As a result, Ms. Kogos did not request service on the City until 1988. The City did not file its answer until 1992.

. Mr. Witt told respondent that it would not be good for respondent's re-election campaign to have a disciplinary complaint against him. Mr. Witt also told respondent that he would go to the news media unless they worked something out.

. The committee relied on Standards 4.42 (suspension is appropriate for conduct involving knowingly failing to perform services or engaging in a pattern of neglect), 4.52 (suspension is appropriate for conduct involving engaging in an area of law in which the lawyer is not competent), 4.62 (suspension is appropriate for conduct involving knowingly deceiving a client), and 7.2 (suspension for conduct involving knowingly violating a duty owed to the profession).

. The record indicates the discussion between respondent and Mr. Witt on this issue was very informal in nature, calling into question whether there was ever a formal "offer" of settlement by respondent to Mr. Witt. Moreover, even assuming for sake of argument respondent made a settlement offer to Mr. Witt, it is clear Mr. Witt did not accept it. Under these circumstances, we cannot say the ODC has proven a violation of Rule 1.8(h) by clear and convincing evidence. See In re: Fazande, 03-2210 (La.1/21/04), 864 So.2d 174.