*1019 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| ,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Clifford L. Newman, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

08-DB-035

The Conway Matter

The following facts are not in dispute, having been stipulated to by the parties:
Jovita Conway was injured on August 3, 2000 onboard the Enchanted Capri cruise ship. On August 8, 2000, Ms. Conway hired respondent to represent her in the related personal injury matter. Respondent and Ms. Conway entered into a contingency fee agreement that was not reduced to writing.
On August 5, 2002, respondent filed a lawsuit in the United States District Court for the Eastern District of Louisiana on behalf of Ms. Conway and her husband. However, the defendants named in the lawsuit were the incorrect parties. Consequently, the lawsuit was dismissed with prejudice, and Ms. Conway lost her claim.
|2On or about March 31, 2005, Ms. Conway terminated respondent’s services via a hand-delivered letter. The letter requested all of Ms. Conway’s files and property, which she indicated she would pick up on April 4, 2005. Respondent acknowledged receipt of the letter.
On April 18, 2005, Ms. Conway’s new attorney, Richard Gallagher, sent respondent a fax, again requesting Ms. Conway’s entire file. Respondent acknowledged receipt of the fax. On April 26, 2005, Mr. Gallagher faxed another letter to respondent, requesting Ms. Conway’s entire file by May 4, 2005. Respondent acknowledged receipt of the fax. On or about May 4, 2005, Mr. Gallagher telephoned respondent and spoke with his staff to determine the status of the file. Respondent acknowledged the telephone call.
Mr. Gallagher filed a disciplinary complaint against respondent for respondent’s failure to turn over Ms. Conway’s file. Respondent received the complaint on or about July 1, 2005. Through counsel retained to represent him in the disciplinary matter, respondent finally delivered Ms. Conway’s file to Mr. Gallagher on August 1, 2005.
On or about July 15, 2005, Mr. Gallagher filed a malpractice lawsuit against respondent on Ms. Conway’s behalf, alleging respondent’s failure to name and pursue the proper defendants in Ms. Conway’s lawsuit, his failure to adequately communicate the status of Ms. Conway’s claim and lawsuit, and his failure to provide Ms. Conway’s file. Ms. Conway settled the malpractice lawsuit against respondent, and the lawsuit was dismissed with prejudice on May 6, 2008.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), |31.5(c) (contin *1020 gency fee agreements), 1.16(d) (obligations upon termination of the representation), and 8.4(a) (violation of the Rules of Professional Conduct).

W-DB-01,.9

The Vital Matter

By way of background, in December 1997, Bryant Vital was the driver of a vehicle that was involved in an automobile accident. Both Mr. Vital and his passenger, Howard Patterson, were injured in the accident.
Thereafter, Mr. Vital and Mr. Patterson both hired respondent’s law firm, through consultation with a former associate attorney, to represent them. Mr. Vital signed a written contingency fee agreement with the firm. However, neither respondent nor his associate discussed with Mr. Vital and Mr. Patterson the possibility of a conflict of interest between them.
Respondent filed a lawsuit on behalf of both Mr. Vital and Mr. Patterson. Thereafter, he settled Mr. Patterson’s claims, and his staff closed his file. Because Mr. Vital’s information was contained in the same file as Mr. Patterson’s, respondent failed to pursue Mr. Vital’s claim after Mr. Patterson’s claim settled. Consequently, Mr. Vital’s lawsuit was dismissed as abandoned on April 30, 2003.
Between April 30, 2003 and October 10, 2008, when Mr. Vital filed a disciplinary complaint against respondent, respondent did not make contact with Mr. Vital, did not respond to Mr. Vital’s requests for information about his case, and did not inform Mr. Vital that his lawsuit had been dismissed as abandoned. After respondent was notified of Mr. Vital’s disciplinary complaint, he arranged to meet with Mr. Vital at his office. Mr. Vital brought his friend, Mary Sam, to the meeting. During the meeting, respondent informed Mr. Vital that he wanted to pay Mr. Vital the value of his claim and gave Mr. Vital a $3,000 check to that end. RHowever, respondent did so without advising Mr. Vital in writing that he should seek the advice of independent counsel.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.4, 1.5(c), 1.7 (conflict of interest), 1.8(h)(2) (a lawyer shall not settle a claim or potential claim for malpractice liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith), 3.2 (failure to make reasonable efforts to expedite litigation), 5.3 (failure to properly supervise a non-lawyer assistant), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
DISCIPLINARY PROCEEDINGS
In March 2008, the ODC filed formal charges against respondent in 08-DB-035. In August 2010, the ODC filed formal charges against respondent in 10-DB-049. Respondent, through counsel, answered both sets of formal charges, denying certain factual allegations while admitting to others. The matters were then consolidated before proceeding to a formal hearing on the merits, conducted by the hearing committee in February 2011. During the hearing, the parties submitted a joint stipulation of facts with respect to the Conway matter.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee adopted the parties’ stipulated facts as its factual findings in the Conway matter and made factual findings in the Vital matter consistent with the underlying facts set forth above. Based on those facts, the committee determined *1021 |Bthat respondent violated the Rules of Professional Conduct as alleged in both sets of formal charges, with the following exceptions:
In the Vital matter, the committee determined that, contrary to the factual allegations of the formal charges, respondent’s associate did secure written contingency fee agreements with both Mr. Vital and Mr. Patterson. The committee further determined that the ODC failed to prove by clear and convincing evidence that respondent or his associate violated rules regarding conflicts of interest by accepting the representation of both Mr. Vital and Mr. Patterson. Although the committee acknowledged the potential for a conflict of interest, it found no evidence to establish that Mr. Vital or Mr. Patterson were guilty of causing the underlying automobile accident, which would have provided a cause of action by one against the other. Therefore, there was no evidence of a significant risk that the representation of either client would be materially limited by respondent’s responsibility to the other. Nevertheless, the committee found that it would have been appropriate for respondent or his associate to secure written acknowledgements and waivers of the potential conflict of interest before proceeding with the representations.
Before recommending a sanction for respondent’s misconduct, the committee considered the aggravating and mitigating factors present. In aggravation, the committee found prior disciplinary offenses (a 1991 admonition), a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1971). In mitigation, the committee found only the remoteness of respondent’s prior disciplinary offense. However, the committee also expressed its astonishment that respondent could not recall the circumstances that led to his admonition.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for three months, followed by one year of | fiprobation with the condition that he complete the Louisiana State Bar Association’s Ethics School.
Respondent objected to the hearing committee’s recommended sanction, arguing that it was “unusually harsh and severe.” Respondent claimed that the committee placed undue significance on the fact that he could not recall the underlying misconduct that led to his admonition, noting that the ODC also did not know what misconduct led to his admonition. Respondent argued that prior disciplinary offenses should not be given great weight when they are remote in time. Respondent also argued in mitigation that he made full restitution to both Ms. Conway and Mr. Vital. Finally, respondent pointed out that his associate was handling the Vital case when it prescribed, and, other than not putting the resolution in writing, respondent acted appropriately in resolving Mr. Vital’s claim. Based on these arguments, respondent requested that he be publicly reprimanded or receive a fully deferred suspension.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee was correct in accepting the facts as stipulated to by the parties. The board also determined that the committee’s additional factual findings regarding the Vital matter do not appear to be manifestly erroneous.
The board further determined that the committee correctly applied the Rules of Professional Conduct. Specifically, in the Conway matter, the board found that respondent violated Rules 1.1(a), 1.3, and 3.2 by filing Ms. Conway’s lawsuit two years after being hired and naming improper parties as the defendants, which led to the *1022 dismissal of the lawsuit. Thereafter, respondent failed to take any steps to remedy his error, and Ms. Conway ultimately lost her claim. He also violated Rule 1.4 because Ms. Conway made numerous attempts to contact him, but he could not |7be reached. Furthermore, respondent did not have a written contingency fee agreement with Ms. Conway, in violation of Rule 1.5(c). Respondent also violated Rule 1.16(d) by failing to promptly release Ms. Conway’s file after she terminated the representation, despite multiple requests from Ms. Conway and her new attorney. Finally, the board found that respondent violated Rule 8.4(a) in the Conway matter by violating the above Rules of Professional Conduct. In the Vital matter, the board found that respondent violated Rules 1.1(a), 1.3, and 3.2 when he abandoned Mr. Vital’s claim after Mr. Patterson’s claim was settled and their combined file was closed. Respondent also violated Rule 1.4 because Mr. Vital made numerous requests for information regarding his claim to no avail. Furthermore, between the 2003 dismissal of Mr. Vital’s lawsuit on the grounds of abandonment and the 2008 filing of Mr. Vital’s disciplinary complaint, respondent never contacted Mr. Vital or informed him of the dismissal. Thereafter, respondent settled Mr. Vital’s claim for malpractice without notifying him in writing that he may want to seek the advice of independent counsel, in violation of Rules 1.8(h)(2) and 8.4(d). By failing to adequately supervise his staff, which resulted in Mr. Vital’s file being closed when his case was still pending, respondent violated Rule 5.3. Finally, the board found that respondent violated Rule 8.4(a) in the Vital matter by violating the above Rules of Professional Conduct. The board agreed with the committee that respondent did not violate Rules 1.5 and 1.7 in the Vital matter.
The board then determined that respondent violated duties owed to his clients, the legal system, and the legal profession. Respondent initially acted with negligence but then knowingly failed to remedy his mistakes or inform his clients of them. His misconduct caused substantial harm to his clients. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that |8the baseline sanction is suspension. The board agreed with the aggravating and mitigating factors found by the committee.
After further considering this court’s prior jurisprudence involving similar misconduct, the board determined that an actual period of suspension is necessary. Accordingly, the board recommended that respondent be suspended from the practice of law for 90 days, with all but 30 days deferred, followed by one year of probation with the condition that he complete the Louisiana State Bar Association’s Ethics School.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In this matter, the record supports a finding that respondent neglected two legal matters, failed to communicate with two clients, failed to reduce a contingency fee agreement to writing, settled a malpractice claim with a client without informing the client in writing to seek the advice of independent counsel, and failed to promptly return a client’s file upon termination of the representation. Based on *1023 these findings, respondent has violated the Rules of Professional Conduct as found by the hearing committee and the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain | ¡)high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We agree with the board that respondent initially acted with negligence but then knowingly failed to remedy his mistakes or inform his clients of same. We also agree that his misconduct caused substantial harm to his clients as both Ms. Conway and Mr. Vital lost their claims due to respondent’s misconduct. The baseline sanction for this type of misconduct is suspension.
The record supports the aggravating factors found by the committee and the board. In mitigation, the record indicates the presence of the following: the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, imposition of other penalties or sanctions (respondent paid approximately $57,000 of his own money to settle Ms. Conway’s malpractice lawsuit against him), and remoteness of prior offenses.
Turning to the issue of an appropriate sanction, the prior jurisprudence of this court suggests that the board’s recommended sanction is within the range of appropriate sanctions for respondent’s misconduct. For example, in In re: Fazande, 03-2210 (La.1/21/04), 864 So.2d 174, an attorney neglected two legal matters and failed to communicate with two clients. Noting that “[t]he baseline sanction for misconduct involving multiple instances of neglect and failure to communicate is generally a suspension, which is sometimes deferred in part,” we imposed a six-month suspension, with three months deferred, followed by one year of unsupervised probation. In In re: Dunn, 98-0535 (La.6/5/98), 713 So.2d 461, an attorney allowed a client’s case to be dismissed on grounds of abandonment and then tried to monetarily settle the malpractice liability with the client without suggesting that the client seek advice from independent counsel. For this misconduct, we imposed a fully deferred six-month suspension, subject to one year of probation with conditions. Finally, in In re: Heisler, 06-1202 (La.11/3/06), 941 So.2d 20, an attorney neglected a legal matter and attempted to remedy his malpractice through an improper settlement with the client. For this misconduct, we imposed a fully deferred one-year suspension, subject to one year of unsupervised probation.
Under these circumstances, we find the board’s recommended sanction is reasonable. Accordingly, we will adopt the board’s recommendation and impose a 90-day suspension, with all but 30 days deferred, followed by one year of probation with the condition that respondent complete the Louisiana State Bar Association’s Ethics School.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Clifford L. Newman, Louisiana Bar Roll number 9109, be *1024 and he hereby is suspended from the practice of law for ninety days. It is further ordered that all but thirty days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall successfully complete a one-year period of probation, during which he shall also complete the Louisiana State Bar Association’s Ethics School. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing [^additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.